IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| P. JOHNSON,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,**[2] <br><br> **Defendant.** | Case No. 3:21-CV-00588-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.[3]

## BACKGROUND

Plaintiff originally applied for DIB in November 2017, alleging a disability onset date of August 21, 2017. (Tr. 296-302). Her claim was initially denied on February 1, 2018, and again after reconsideration on August 10, 2018. (Tr. 167-171, 173-176). These denials prompted Plaintiff to request a hearing before an Administrative Law Judge ("ALJ"), who also denied benefits on August 16, 2019, after an evidentiary hearing. (Tr. 180-181, 142-154). The Appeals Council accepted Plaintiff's request for review and remanded her

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See FED. R. CIV. P. 5.2(c) and the accompanying Advisory Committee Notes.
[2] Kilolo Kijakazi is currently the Acting Commissioner of Social Security.
[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404.

case on May 11, 2020. (Tr. 162-165). Upon remand and after a supplemental hearing, the ALJ denied benefits again on October 15, 2020. (Tr. 15-31). The Appeals Council denied review on April 21, 2021, rendering the ALJ's decision the final agency decision for which Plaintiff seeks review. (Tr. 1-5). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ failed to properly assess the need for an assistive device.
2. The ALJ erred in evaluating residual functional capacity ("RFC").
3. The ALJ erred in his assessment of the opinion evidence.
4. The ALJ failed to properly assess Plaintiff's symptoms.
5. Constitutional issue with the Social Security Administration's structure.

## Legal Standard

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently engaged in substantial gainful activity? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or

medically equal one on a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer either leads to the next step, or on Step 3 or Step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at Step 3, precludes a finding of disability. The claimant bears the burden of proof at Steps 1 through 4. Once the claimant reaches Step 5, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not

abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein. For example, administrative decisions that fail to mention highly pertinent evidence or fail to build a logical bridge between the facts of the case and the outcome cannot be upheld. *Id.*

## EVIDENTIARY RECORD

The Court reviews and considers the entire evidentiary record in preparing such an Order, but the following summary of the record is directed to the points raised by Plaintiff.

### I.     Evidentiary Hearing

Plaintiff was represented by an attorney at her initial hearing in July 2019 when she and a vocational expert testified before the ALJ. (Tr. 74-75). She testified that after her back surgery she could not return to work and had limited ability to sit, stand, or walk even with her spinal cord stimulator. (Tr. 81, 85, 95).

In the supplement hearing, Plaintiff likewise testified that her back surgery and the residual back pain radiating to her legs prevented her from returning to work. (Tr. 52-55, 60). She further testified that she relied on a walker or cane, her pain medicine options were limited due to adverse side effects, and that she used an implanted spinal stimulator. (Tr. 55-56). At the same time, she suffered some hand numbness and tingling that limited her ability to do manipulative activities like hold objects. (Tr. 63-65). Plaintiff stated that she relied on the support of her family to manage household tasks. (Tr. 70). In the reports submitted to the Agency, Plaintiff confirmed that she used a cane inside her house and a walker elsewhere. (Tr. 371). Moreover, Plaintiff could not bend or tolerate

long durations of walking, standing, or sitting. (Tr. 365-370). Plaintiff was limited to lifting ten pounds and also struggled with her memory, concentration, and ability to complete tasks. (Tr. 365-370). Further, Plaintiff stated that her husband did the cooking and household chores while also helping to watch her grandchildren. (Tr. 366-367).

A vocational expert ("VE") also testified. The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. (Tr. 105). Based on the hypothetical, the VE testified that someone who could perform a range of light work could perform Plaintiff's past work as a babysitter, childcare attendant, program aide, case aide, or insurance sales agent. (Tr. 106). The VE confirmed, however, that if an individual required frequent unscheduled breaks or unpredictable absences, there would be no suitable work. (Tr. 107).

## II. Relevant Medical Records

The critical time period relevant to this action spans from August 2017 to June 2018. The Court's review of medical evidence will focus on this time.

After lifting an item and hearing a "pop," Plaintiff hurt her back. (Tr. 1170, 1219). Plaintiff sought treatment in a variety of ways after this incident including physical and occupational therapy, opiate analgesics, neuropathic pain medicines, facet blocks, trigger point injections, and nerve blocks. (Tr. 582, 601, 606). These remedies did not relieve Plaintiff's persisting pain. On August 21, 2017, Jon Taveau, D.O., ("Dr. Taveau"), a neurosurgeon, performed a lumbar spine infusion. (Tr. 1169-1213, 1221). After the surgery, Plaintiff was monitored in the hospital for eight days. (Tr. 1169, 1201). The hospital notes reflected that, at this time, Plaintiff used a walker. (*Id.*). The following

month, Plaintiff found herself back in the hospital due to intense pain, where she also used a walker (Tr. 1157-1169).

From the time of her surgery to her date last insured, Lee Bee, D.O., ("Dr. Bee") treated Plaintiff as her primary care provider. Over this time, Dr. Bee reported that Johnson continued to experience low back pain which radiated through her lower extremities that required the use of a walker with wheels and later a cane. (Tr. 479, 505, 1328, 1542). Dr. Bee noted clinical findings including decreased upper and lower extremity strength, trigger points, decreased foot sensation, limited spinal motion, numbness in her hands with finger pain, muscle spasms with spinal palpation, pain reproduced on Gaenslen's test, pain with straight leg raising starting at 40 degrees, stunted lower extremity reflexes, antalgic gait, positive Romberg sign, left side Babinski sign, morbid obesity with a body mass index of 43, and medication side effects. (Tr. 500, 1325, 1378, 1404, 1428, 1455, 1507, 1537, 1600, 1742, 1955). In December 2017, months after Plaintiff's back surgery, Dr. Bee reported improvement as Plaintiff could lift up to 30 pounds and recommended that Plaintiff get two to two and a half hours of aerobic exercise per week. (Tr. 1853, 1921, 1326).

Plaintiff's neurosurgeon, Dr. Taveau, also noted Plaintiff's ongoing lower back and leg pain, painful gait, and use of a walker followed by use of a cane. (Tr. 1121-1130). The neurology notes also describes an antalgic gait, inability to tandem walk, positive Romberg sign, and limited lumbar motion and strength. (Tr. 1782-1783).

A pain management specialist, C. Reis, D.O., ("Dr. Reis"), also treated Plaintiff. Dr. Reis observed that Plaintiff had side effects of sedation and cognitive problems with

many narcotics. (Tr. 1813). As such, Dr. Reis advised Plaintiff to avoid driving or operating machinery while on her medicine. (Tr. 1819). Notes from the pain clinic indicate an antalgic gait and hypesthesia or reduced sensation. (Tr. 1817, 1825, 1831). Plaintiff's pain appeared to be aggravated by standing, walking, sitting, flexion, extension, and lifting. (Tr. 1813). Dr. Reis eventually implanted a spinal stimulator. (Tr. 1827, 2928-2931). The wound care notes demonstrated delayed healing, antalgic gait, and cane use. (Tr. 3325, 3335).

Plaintiff underwent physical therapy, supervised by J. Lippert-Keck, M.D. ("Dr. Lippert-Keck), as well. Notes from those visits indicate that Plaintiff used a walker and had not met the goal of ambulating full stride unassisted by any device. (Tr. 3381, 3389, 3399). Almost a year after her date last insured, Plaintiff relied on a cane to complete a full lap in therapy. (Tr. 3381, 3389, 3399). Dr. Bee's notes indicate that Plaintiff's pain persisted past her date last insured. (Tr. 1866-96, 3072-3209).

Moving to March 2019, Dr. Bee referred Plaintiff for a functional capacity evaluation. (Tr. 3494-3509). The evaluation entailed the following circuit repeated three times in 30 minutes without seated rest: carrying 15 pounds 150 feet, climbing a flight of stairs, push/pulling a weighted sled 50 feet, carrying 8 pounds 75 feet with each upper extremity, and navigating a hand truck 150 feet. (Tr. 3501). In that evaluation, Plaintiff brought a cane and showed signs of antalgic ambulation while walking on a treadmill supporting herself with her arms. (Tr. 3498). After 30 minutes of positional tolerance, Plaintiff showed signs of fatigue (Tr. 3503). The evaluator, therapist Jacob Pattengill, assessed that Plaintiff could constantly sit, walk (without assistance), and handle objects,

and frequently climb stairs, stoop, balance, perform fingering, grasping, and gross hand manipulation. (Tr. 3494). Further, the evaluator stated Plaintiff could rarely kneel, crouch, or crawl. (Tr. 3494).

### III. State Agency Consultants' Opinions

Another medical provider, L. Gonzales, M.D. ("Dr. Gonzales") reviewed the record for the Agency in January 2018. (Tr. 118-120). Dr. Gonzales assessed that Plaintiff could perform light work with occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; and no concentrated exposure to extreme heat, extreme cold, wetness, humidity, fumes/dust/gases/odors, or hazards. (Tr. 118-120.). Dr. Gonzalez concluded that Plaintiff could stand or walk for up to six hours a day without assistance. (Tr. 118-120.). Months later, in August 2018, Prasad Kareti, M.D., ("Dr. Kareti") affirmed this opinion. (Tr. 133).

## DECISION OF THE ALJ

The ALJ followed the five-step sequential evaluation process described above to determine if Plaintiff was disabled during the critical time at issue. (Tr. 16-18). The ALJ determined that Plaintiff last met the insured status requirements on June 30, 2018, and that Plaintiff did not engage in substantial gainful activity from August 21, 2017, the alleged onset date, through June 30, 2018. (Tr. 18). Specifically, the ALJ found that Plaintiff, through the last insured date, had the following severe impairments: lumbar degenerative disc disease and herniation status post lumbar spine fusion, failed back syndrome status post spinal cord stimulator placement, obesity, diabetes mellitus, and asthma. (Tr. 18-20).

Further, the ALJ found that through the date last insured Plaintiff had the RFC to perform light work where she could frequently stand, walk, sit, climb stairs, reach forward, reach overhead, balance, stoop, and finger and grasp. (Tr. 21). She could also occasionally reach to floor level, kneel, crouch, and crawl. In terms of lifting capacity, the ALJ determined that Plaintiff could frequently carry and lift ten pounds from shoulder to overhead and fifteen pounds from floor to waist and waist to shoulder. Moreover, Plaintiff could occasionally carry and lift fifteen pounds from shoulder to overhead and twenty pounds from floor to waist and waist to shoulder. (Tr. 21-29).

The ALJ also determined that Plaintiff, through the last insured date, was capable of performing past relevant work, as such work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 29-31). Based on the testimony of the vocational expert, the ALJ found that Plaintiff is capable of performing her past work as a program and case aide as she actually performed it and as generally performed in the national economy. (Tr. 30-31).

## DISCUSSION

### I.    Failing to Assess the Need for an Assistive Device

Plaintiff first highlights that the Appeals Council remanded the case back to the ALJ with the instruction that, "Evidence of record indicates that the claimant's treating physician, Lee Bee, prescribed [a] walker with wheel and handbrakes on April 28, 2017, and a quad cane on January 26, 2018 and that the claimant continued to use these assistive devices [through] the month of her date last insured as identified in the decision." (Tr. 163) (internal record citations omitted). Plaintiff argues that the ALJ mistakenly

reasoned that reports of normal gait or the ability to walk unassisted for short distances undermined the notion that Plaintiff used or needed a cane or assistive device. The ALJ also used flawed logic, according to Plaintiff, in assessing records that mentioned antalgic gait with no reference to an assistive device to mean that Plaintiff no longer used her assistive device. Further, Plaintiff laments that the ALJ rested his decision on the fact that her treating physicians failed to provide a detailed rationale supporting the need for an assistive device. The ALJ relied heavily on the functional capacity evaluation and considered the results inconsistent with the use of an assistive device, however, Plaintiff avers that she used a cane during the evaluation, and had to support herself with her arms while on the treadmill. Ultimately, Plaintiff urges that the ALJ's failure to properly assess the need for an assistive device is pivotal because the ALJ found Plaintiff not disabled on the basis that she could perform light work, and the use of an assistive device would limit her to sedentary work.

In response, the Commissioner argues that the ALJ was reasonably persuaded by the opinions that Plaintiff did not require walking assistance. The Commissioner points to two medical expert conclusions, Dr. Gonzalez's and Dr. Kareti's, who concluded that Plaintiff could stand or walk for up to six hours a day without assistance. The Commissioner emphasizes that, in March 2019, after a comprehensive medical exam, evaluator Pattengill concluded that Plaintiff could walk constantly without reference to walking assistance. Important to the Commissioner's argument, the ALJ referenced many reports of normal gait and improving strength along with Dr. Bee's instruction to partake in two to two and a half hours of aerobic exercise per week. The Commissioner

characterizes the notations by a couple providers that Plaintiff needed a cane as unexplained, and for an indeterminate period of time. The Commissioner concedes that Dr. Bee prescribed a walker with wheel and handbrakes in April 2017, but states that Dr. Lipper-Keck, merely "signed off" on the nurse practitioner's unexplained assessment that Plaintiff required use of an assistive device. The Commissioner also notes that Dr. Bee documented "walker with wheel and handbrakes, seat Use for ambulation (start date: 4/28/17) and "quad cane uses for ambulation" in the medications section in a 2018 report. The Commissioner essentially argues that the ALJ comprehensively and repeatedly explained why the evidence of adequate functioning outweighed the unsupported conclusions that Plaintiff needed ambulatory assistance, let alone for the requisite twelve consecutive months. Moreover, the Commissioner asserts that Plaintiff asks this Court to reweigh evidence, which it cannot do.

>With respect to ambulation and the use of an assistive device, the ALJ determined:
>
>>Specifically, many objective findings from the period at issue show the claimant had normal gait. She was able to stand on her heels and toes. While she used a wheeled walker after her surgery in August 2017, there is no objective evidence to support a conclusion that the claimant would have a long-term need for this assistive device. Instead, physical therapy records from September 2017 show the claimant had already significant improved with no gait deviations and that the claimant herself was impressed with her progress. Although some subsequent records state she had an antalgic gait, most of these records show she did not walk with an assistive device, evidencing she stopped using her walker consistently well before a year after her surgery.

(Tr. 20) (internal exhibit citations omitted).

The ALJ's decision, both in the paragraph above and throughout his findings, does

not ignore reference to assistive devices. Contrarily, the ALJ appears to weigh the limited instances in the record referencing canes, assistive devices, and wheeled walkers against the evidence in the record that demonstrates normal gait and other physical performance. Plaintiff criticizes the ALJ's decision as conflating normal gait with the absence of a need for an assistive device citing a Seventh Circuit case cautioning against such logic. *See Rainey v. Berryhill*, 731 F. App'x 519 (7th Cir. 2018). In *Rainey*, however, the Seventh Circuit found the ALJ put too much weight on one physician's perfunctory notation that the plaintiff walked with a "normal gait," given that the physician focused only on routine health maintenance and not physical abilities. *Id.* at 523. The ALJ in *Rainey* used that fact, paired with another physician's assessment that the plaintiff could walk on his toes and heels (to which the ALJ gave lesser weight) to conclude that the plaintiff was not reliant on his cane. In that situation, the *Rainey* court found the ALJ failed to build a logical bridge from the evidence cited to his conclusion. Such is not the case here.

The ALJ documents many instances of normal gait, physical performance, and general ability level. Moreover, the ALJ discusses Plaintiff's self-reported improvement throughout the year, and the overall opinions of Plaintiff's evaluators and physicians. The Court finds that the ALJ made his determination based on substantial evidence. The record does indicate intermittent use of an assistive device and antalgic gait, but Plaintiff cannot claim that the record contains overwhelming reference to such devices or conditions. In any event, the ALJ appears to have considered these references and weighed them appropriately. Further, as Plaintiff urges that normal gait does not implicate consistent lack of an assistive device, likewise, antalgic gait does not implicate

consistent use of an assistive device.

The ALJ based his decision on substantial evidence in the record and built a logical bridge from the evidence to his conclusion with respect to the use of an assistive device. Plaintiff seeks to reweigh the assistive device evidence, which the Court cannot do. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) ("We review the record as a whole, but we are not to reweigh the evidence or substitute our own judgment for that of the ALJ.").

## II. Failing to Properly Evaluate RFC

Aside from the assessment of her need for an assistive device, Plaintiff asserts that the ALJ committed other critical errors in reaching the RFC conclusion. Primarily, Plaintiff contends that the ALJ failed to confront evidence that did not support his opinion, like notes of diminished strength and sensation. Moreover, Plaintiff faults the ALJ for crediting results of one test without reconciling records that showed differing results, like the conclusions related to hand use. Plaintiff briefly argues that the ALJ also failed to consider the combined impact of her many impairments.

Importantly, "the ALJ is not required to address every piece of evidence," but he or she must "articulate some legitimate reason for his decision" building an "accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ did just that. In a comprehensive discussion of Plaintiff's testimony and medical records, the ALJ addressed Plaintiff's reported impairments, and listed his reasoning for why the objective medical evidence supported his conclusions.

For the same reasons, the Court rejects Plaintiff's argument as to the combined

impact of her various impairments, as the ALJ described and evaluated many of her other conditions thoroughly discussing function and abnormalities. Further, the record reflects that the VE accounted for each of Plaintiff's other impairments.

### III. Failing to Assess the Opinion Evidence

Next, Plaintiff argues that the ALJ failed to properly evaluate or explain his credibility assessments of the medical opinion evidence through the lens of consistency and supportability. This argument relates in part to Plaintiff's argument as to an assistive device, because the ALJ found unpersuasive Dr. Bee's recommendation to use a wheeled walker in April 2017 and a quad cane in January 2018, and similarly, Dr. Lippert-Keck's opinion that Plaintiff use an assistive device to walk, navigate stairs, or tackle uneven surfaces.

For claims filed on or after March 27, 2017, the ALJ is required to evaluate the medical opinion evidence under 20 C.F.R. § 404.1520c. Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id*. An ALJ is required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id*. When evaluating medical opinions, 20 C.F.R. § 404.1520c lists out factors for ALJ's to consider including: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. "An ALJ's decision must explain how she considered the factors of *supportability* and *consistency*, but she is not

required to explain how she evaluated the other factors." *Josefina T. v. Kijakazi*, 2022 WL 2669523, at *3 (N.D. Ill. July 11, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)) (emphasis added).

A review of the record reveals that the ALJ engaged sufficiently with the evidence and followed 20 C.F.R. § 404.1520c. The ALJ noted why he found each instance of opinion testimony persuasive or unpersuasive. Specific to the assistive device, the ALJ discredited Dr. Bee's and Dr. Lippert-Keck's recommendations that Plaintiff use an assistive device because the recommendations were isolated and limited not evidencing consistent use or need for the device. Furthermore, Plaintiff takes issue with the ALJ's determination that these doctors did not provide more rationale for why an assistive device was necessary within the medical records. The ALJ clearly reasons, however, that in light of all the evidence to the contrary, isolated recommendations for use of an assistive device are not persuasive, and perhaps if the records contained more rationale demonstrating long-term or consistent need, then he would give more weight to those opinions. With regard to these findings, along with the others detailed in the ALJ's decision, each explains the factors of consistency and supportability. In fact, most of the ALJ's findings detail consistency, not only with other opinion testimony, but also the objective medical records and Plaintiff's self-reported symptoms.

## IV.     Failing to Assess Properly Assess Symptoms

Plaintiff also takes issue with the ALJ's symptom evaluation, claiming that the ALJ did not explain how her abilities to perform light day-to-day activities contradicted her allegations of ongoing pain and functional limitations. The ALJ, according to Plaintiff, cherry-picked comments or examples from the record to demonstrate symptoms

inconsistent with disability.

The Court disagrees. Throughout his findings the ALJ spends ample time describing Plaintiff's symptoms, especially ones that challenge his finding of no disability, from sciatica to reduced strength in her lower extremities to antalgic gait to range of motion and beyond. The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected. *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ did so in this case.

### V.     Constitutional Challenge to Social Security Administration's Structure

Finally, Plaintiff attempts, on appeal of the agency's adverse decision, to raise a constitutional argument related to the improper structure of the Social Security Administration. The Court declines to take up this argument because Plaintiff fails to demonstrate how this entitles her to a rehearing of her DIB claim.

### CONCLUSION

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Commissioner.

**IT IS SO ORDERED.**

DATED:  September 30, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**